**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **25-CR-260-ZMF** |
| **JEMAROCO SPENCER** | : | |

## MEMORANDUM IN AID OF SENTENCING

Jemaroco Spencer, is an extremely caring and present parent.  During the school year he walks his daughter to and from school and spends the evenings with her completing her homework. During the summer, he hopes to spend even more time with his children while on their break. Mr. Spencer, through undersigned counsel, therefore respectfully requests this Honorable Court sentence him to a time-served sentence, no fine, and a 12-month term of supervision.  The requested sentence is sufficient but not greater than necessary under the sentencing factors at 18 U.S.C. § 3553(a).

## APPLICABLE LAW

As this Court well knows, the era of binding guidelines ended when the Supreme Court held that after severing the unconstitutional provisions of the Federal Sentencing Reform Act of 1984, "the Guidelines [were made] effectively advisory**.**" *United States v. Booker*, 543 U.S. 220, 245 (2005). Under *Booker*, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *Id.* at 264 (citing 18 U.S.C. § 3553(a)(4), (5)).   While holding that district courts should still consider the Guidelines calculations and ranges for sentencing purposes, the Supreme Court in *Booker* held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a).   Overall, in light of *Booker*, courts must treat the Guidelines as just one among several of the sentencing factors.

As the Supreme Court has explained, "[o]ur cases do not allow a sentencing court to

1

presume that a sentence within the applicable Guidelines range is reasonable." *Nelson v. United States*, 555 U.S. 350, 352 (2009). The sentencing court's "overarching duty" is to "'impose a sentence sufficient, but not greater than necessary,'" *Pepper v. United States*, 562 U.S. 476, 493 (2011) (quoting 18 U.S.C. § 3553(a)), to comply with "the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation," *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017); *see also* 18 U.S.C. § 3553(a)(2). In addition, the sentencing court may consider any "information concerning the background, character, and conduct" of the defendant, including age, educational and vocational skills, mental and emotional conditions, and lack of guidance as a youth. 18 U.S.C. § 3661.

**ARGUMENT**

A sentence of time served is sufficient but not greater than necessary to serve the purposes of sentencing and satisfy the § 3553(a) factors.

I. **The nature and circumstances of the offense, and Mr. Spencer's history and characteristics**

Jemaroco Spencer was born in Washington, D.C., to a young mother and a father who would be largely absent from his life. Because of his father's absence, Mr. Spencer was primarily raised by his mom and grandmother, in an overall loving home. Mr. Spencer's family struggled financially, resulting in the family moving frequently and Mr. Spencer having to grow up faster than most.

Mr. Spencer is now a father, who dedicates his time and energy to raising his daughters. Fortunately, he has had the ability be active in this children's lives, including the time he has spent at school pickup and drop off, doing homework, and spending time together engaging in various recreational activities.

Mr. Spencer accepts full and complete responsibility for his actions on August 18, 2025. The overall context of Mr. Spencer's arrest cannot be ignored. Mr. Spencer was arrested after being stopped by members of various law enforcement agencies, including U.S. Park Police and the Drug Enforcement Agency. During the traffic stop, officers observed a rolled marijuana cigarette behind Mr. Spencer's ear. Mr. Spencer also advised the officers that he did not have a valid driver's license. Mr. Spencer was subsequently arrested.

While being booked at the U.S. Park Police Station, Mr. Spencer attempted to dispose of a plastic baggie of cocaine base, or "crack" by flushing it down the toilet. As soon as Mr. Spencer made this attempt, at least four agents immediately jumped on him. And despite protestations from Mr. Spencer that he "can't breathe," the agents continued to restrain him by aggressively applying force to Mr. Spencer's arms, legs, and back. *See* Ex. 1, BWC. It is this context—while fighting for air and to avoid further physical pain to his body—that Mr. Spencer, "was kicking his legs and swinging his arms." ECF 35 at 4.

Despite being arrested on misdemeanor charges August 18, 2025, Mr. Spencer did not appear before *any* court for an initial appearance until August 25, 2025.

## II.    The purposes of sentencing will be accomplished with a time-served sentence

The "Court's overarching duty" is to "'impose a sentence sufficient, but not greater than necessary,'" *Pepper*, 562 U.S. at 493 (quoting 18 U.S.C. § 3553(a)), to comply with "the four identified purposes of sentencing:  just punishment, deterrence, protection of the public, and rehabilitation."  *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017); *see also* 18 U.S.C. § 3553(a)(2). Specifically, the Court must assess "the need for the sentence imposed" "to reflect the seriousness of the offense, promote respect for the law, . . . provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A)–(C).

3

Because the Guidelines merely reflect a "wholesale" view "rough[ly] approximat[ing] . . . sentences that might achieve § 3553(a)'s objectives," *Booker* and § 3553(a) require the Court to tailor an individualized sentence that actually achieves § 3553(a)'s objectives in the case before it. *Rita*, 551 U.S. at 348, 350.  The Court may not presume that a Guidelines sentence is reasonable and should, instead, consider whether or not the applicable Guidelines sentence properly reflects § 3553(a) considerations and whether "the case warrants a different sentence regardless."  *Id.* at 351.  Indeed, "it remains the judge's duty to tailor every sentencing to the case and defendant at hand," regardless of the Guidelines range.  *United States v. Sabillon-Umana*, 772 F.3d 1328, 1330 (10th Cir. 2014) (Gorsuch, J.).

The gravity and importance of this step of the criminal process cannot be overstated.  As a U.S. District Court Judge observed in one case:

> During the sentencing hearing, the lawyers and the judge discuss the appropriate sentence, often at great length, but after the judge announces a decision, that judge, the lawyers, and the staff move on to the next case; the hearing and outcome soon fade into distant memory. Meanwhile, for the defendant, the torture of a monotonous existence begins, while life for his family moves forward without him. For him, every day, month and year that was added to the ultimate sentence will matter. The difference between ten and fifteen years may determine whether a parent sees his young child graduate from high school; the difference between ten and fifteen months may determine whether a son sees his sick parent before that parent passes away; the difference between probation and fifteen days may determine whether the defendant is able to maintain his employment and support his family. Thus, it is crucial that judges give careful consideration to every minute that is added to a defendant's sentence. *Liberty is the norm; every moment of incarceration should be justified*.

*United States v. Faison*, No. GJH-19-27, 2020 WL 815699, at *1 (D. Md. Feb. 18, 2020) (emphasis added).

## A. The requested sentence would reflect the seriousness of the offense, promote respect for the law, and provide just punishment

Title 18 U.S.C. § 3553(a)(2)(A) provides that the Court must assess "the need for the

4

sentence imposed— . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." A lengthy term of incarceration is not required for a sentence to reflect the seriousness of the offense. Even a sentence of probation "rather than incarceration can work to promote the sentencing goal of respect for the law by illustrating a rejection of the view that the law is merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *United States v. Bennett*, No. 8:07CR235, 2008 U.S. Dist. LEXIS 45302, at *12 (D. Neb. May 30, 2008) (citing *Gall*, 552 U.S. at 99). Here, Mr. Spencer is requesting a time-served sentence, which would provide just punishment and reflect the seriousness of the offense.

The Court will sentence Mr. Spencer for two misdemeanor resisting charges and a misdemeanor a possessory drug offense. Mr. Spencer does not dispute in the slightest that drugs is dangerous and his use of illicit substances causes harm not just to himself but his family and community as well. In addition, Mr. Spencer recognizes that despite the very real fear he felt when multiple federal agents forcefully restrained him while at the station, it was his actions that led him to that situation.

Further incarceration of Mr. Spencer will not effectuate the goals of sentencing in this case. The federal system is out of step with most states; most states have worked to reduce reliance on incarceration. "[B]etween 2007 and 2013, many states made research-driven policy changes to control prison growth, reduce recidivism, and contain costs. While the federal imprisonment rate continued to rise during that period, the state rate declined." Pew Charitable Trusts, *Growth in Federal Prison System Exceeds States'* 1 (Jan. 2015), https://www.pewtrusts.org/en/research-and-analysis/fact-sheets/2015/01/growth-in-federal-prison-system-exceeds-states. Additionally,

> It is well established that the detrimental effects of incarceration extend into many areas of social life (Wakefield and Uggen 2010). Incarceration limits future

5

employment prospects and earnings (Western and Pettit 2005; Western 2006; Pettit 2012), blocks political participation (Manza and Uggen 2006), and can lead to physical and mental health issues for former offenders (Schnittker, Massoglia, and Uggen 2011). These far-reaching effects have led some to characterize incarceration as a criminal credential or absorbing status that results in continuing disadvantage for former prisoners (Pager 2003, 2007). The consequences of incarceration spread beyond the formerly incarcerated as well. Incarceration increases material hardship and familial stress, exacerbates marital instability by straining family ties, and is associated with a variety of adverse outcomes for children (Wildeman and Muller 2012).

Bryan Sykes & Michelle Maroto, *A Wealth of Inequalities: Mass Incarceration, Employment, and Racial Disparities in U.S. Household Wealth*, 1996 to 2011, 2 Russell Sage Foundation J. of Soc. Sciences 129 (2016), https://www.rsfjournal.org/content/rsfjss/2/6/129.full.pdf http://www.rsfjournal.org/doi/full/10.7758/RSF.2016.2.6.07

Mr. Spencer is not among the class of defendant typically sentenced under Guidelines Section 2A2.4. Indeed, Mr. Spencer's involuntary conduct is more akin to where the physical contact enhancement was not applied because an officer "slapped [the defendant's] hand out of his face," as opposed to the typical case where a defendant affirmatively strikes an officer in the commission of the offense. *United States v. McKeiver*, 982 F. Supp. 842, 843, 845 (M.D. Fl. 1997) (explaining that § 2A2.4(b)(1) enhancement "focuses on and is limited to the conduct of the defendant which constitutes the resisting offense, that is conduct *directed toward* the officers who are being impeded or resisted" (cleaned up)).

Additionally, the Court should consider that while Mr. Spencer has been on pretrial release, he has refrained from the very behavior that led to his contact with law enforcement in this case, namely his driving without a permit and drug use. That Mr. Spencer has been largely successful while on supervision shows that the Court can further fashion conditions of supervision that would further the goals of sentencing to both Mr. Spencer and the community's benefit. Therefore, further imprisonment for the purpose of punishment or incapacitation is not necessary

6

or warranted.

Mr. Spencer accepted responsibility for his actions in this case early on. That he wanted to quickly accept responsibility for his actions instead of challenge the injustice of his pre-initial appearance detention speaks to how genuine Mr. Spencer is in his acceptance of responsibility and desire to turn over a new leaf. The Court has great discretion in fashioning a sentence under the § 3553(a) factors. In reaching the conclusion that a time-served sentence is just in this case, the Court also can and should consider the parties' agreement that Mr. Spencer's conduct constituted a misdemeanor offense under 18 U.S.C. § 111(a).

**B.    The requested sentence would provide adequate deterrence to criminal conduct and protect the public from further crimes of Mr. Spencer**

The Court need not impose more than a time-served sentence to provide adequate deterrence or protect the public from further crimes of Mr. Spencer. *See* 18 U.S.C. §§ 3553(a)(2)(B) and (a)(2)(C). The public has been protected while Mr. Spencer has been on string pre-trial supervision. Indeed, Mr. Spencer has not picked up any new cases while on supervision.

Mr. Spencer recognizes that though he has not been absolutely perfect on supervision, a time-served sentence would still be appropriate in his case. Mr. Spencer's time on pre-trial release makes clear that when he is provided both support and flexibility, he can thrive. For example, as the Court is aware, Mr. Spencer had difficulty early on in his supervision because of his desire to care for his young daughter after school. Recognizing both Mr. Spencer's desire to be present for his daughter and the benefit his continued engagement with his child had on both him and his family, the Court made modest adjustments to Mr. Spencer's conditions of supervision.

The public has been protected while Mr. Spencer has been on supervision and the public will continue to be protected should the court impose a time-served sentence and a period of supervision. As previously stated, lengthy prison sentences do not create a safer public.

7

While "[p]rison is an important option for incapacitating and punishing those who commit crimes," evidence suggests that lengthy prison sentences do not have a "chastening" effect and "produce at best a very modest deterrent effect."[1]  With respect to specific deterrence, research shows conclusively that "[t]he *certainty* of being caught is a vastly more powerful deterrent than the punishment," that "[s]ending an individual convicted of a crime to prison isn't a very effective way to deter crime," and that "[i]ncreasing the severity of punishment does little to deter crime." *Id.* (emphasis in original); *see also* James Austin *et al.*, *How Many Americans Are Unnecessarily Incarcerated?*, Brennan Ctr. For Just., N.Y. Univ. School of Law, 22 (2016) (quoting a 2011 study by criminologists concluding that "across all offenders, prisons do not have a specific deterrent effect.  Custodial sentences [jail and prison] do not reduce recidivism more than noncustodial sanctions.").

In addition, United States Sentencing Commission "research has demonstrated that reductions to sentence length and time served do not harm public safety." *Transforming Prisons, Restoring Lives*, Charles Colson Task Force on Federal Corrections, Urban Inst., 21 (Jan. 2016). This is consistent with a "body of research demonstrat[ing] that longer sentences do not reduce recidivism more than shorter sentences." Austin, Brennan Ctr., *supra*, at 35.  Indeed, some studies have concluded that prison stays longer than 12 to 20 months have diminishing returns, causing higher recidivism.  *Id*.  Similarly, a 2002 Justice Department study "found that recidivism rates did not differ significantly among those released after serving 6 months or less compared to those serving sentences all the way up to 30 months in prison."  *Id*. at 36.

With respect to general deterrence, studies likewise suggest that longer prison sentences have little effect on reducing criminal behavior.  Significantly, a 1997 study in Richmond, Virginia

---

[1] *Five Things About Deterrence*, Nat'l Inst. Justice, U.S. Dep't of Justice, 1–2 (May 2016).

"found no deterrent effect associated" with a policy "that increased prison sentences for gun crimes by prosecuting them as federal crimes." *Id.* at 37. It is often presumed that incarceration is necessary to achieve deterrence, and that the more incarceration imposed, the greater the deterrent effect. But research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects."[2] In short, there is little empirical support for the prospect that a lengthy period of confinement will be any more effective at deterring Mr. Spencer or others from committing this offense. And, indeed, the most effective deterrent is the certainty of punishment, not the severity of punishment. *See, e.g.*, *United States v. Bannister*, 786 F. Supp. 2d 617, 668 (E.D.N.Y. 2011) ("[G]iven that effective deterrence arises from certainty, not harshness, of punishment, our society might better consider whether our scarce resources would be better spent, not on extended incarceration, but on eliminating social conditions encouraging crime and on non-incarceratory techniques").

---

[2] Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006) ("Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence."); *see also* National Institute of Justice, *Five Things About Deterrence*, at 1 (May 2016), https://www.ojp.gov/pdffiles1/nij/247350.pdf (stating, among other things, that "[i]ncreasing the severity of punishment does little to deter crime," and "[t]he certainty of being caught is a vastly more powerful deterrent than the punishment"); Ellen Raaijmakers et al., *Exploring the Relationship Between Subjectively Experienced Severity of Imprisonment and Recidivism: A Neglected Element in Testing Deterrence Theory*, 54 J. of Rsch. in Crime and Delinq. 1, 4 (2017) ("[T]he available evidence points toward a null or a slightly criminogenic effect of imprisonment but has rarely found support for a clear specific deterrent effect."); Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 Crime & Just. 199, 201 (2013) ("[T]here is little evidence of a specific deterrent effect arising from the experience of imprisonment compared with the experience of noncustodial sanctions such as probation. Instead, the evidence suggests that reoffending is either unaffected or increased."); Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity").

Apart from the punishment Mr. Spencer endured during and in the immediate aftermath of his arrest, the collateral consequences that attend to even a misdemeanor federal conviction, cannot be overstated.  District judges have recognized the life-long, damaging impact convictions and subsequent incarceration can be relevant to sentencing.  As one judge in this District reflected,

> People are all very quick to suggest that the only real punishment is a jail sentence, and it's just not true. People can suffer in many different ways and do suffer in many different ways a result of their conduct and that is something every judge, at least on this court, I believe, understands, and takes into account when they're fashioning the appropriate sentence.[3]

Again, Mr. Spencer understands now more than ever the collateral consequences of his conduct affect not just himself, but also his family.  Mr. Spencer understands that he does not have much more time to get his life on track because as he ages, both his capacity to earn and to be present for his family begin to diminish.  Moreover, this case has hindered Mr. Spencer's ability to look for work because of the strict pretrial convictions he has faced, and a significant period of incarceration—such as the periods recommended by the government and probation—will further hinder Mr. Spencer's ability to obtain gainful employment at least in the foreseeable future.  These are additional significant consequences that the Court should consider in concluding a time-served sentence is proper**.**

## CONCLUSION

Here, as the Supreme Court observed in *Gall*, "[a]ny [further] term of imprisonment in this case would be counter effective by depriving society of the contributions of the [Mr. Spencer] who . . . understands the consequences of his criminal conduct and is doing everything in his power to forge a new life."  552 U.S. at 44 (citation omitted).  The requested sentence is not greater than

---

[3] *United States v. Andrew Cavanaugh*, 21-cr-362 (APM), Sentencing Transcript at pg. 29.

necessary, and is sufficient for the purposes of sentencing. For these and any other reasons set forth at the sentencing hearing, Mr. Spencer respectfully requests a sentence of time-served on all counts of conviction.

Respectfully Submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

                /s/
_____
Tezira Abe
Assistant Federal Public Defender
625 Indiana Ave. N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500